29 P.(2d) 714

**ACKERSON et al. v. ALBUQUERQUE LUMBER CO.**

No. 3851.

Supreme Court of New Mexico.

Jan. 27, 1934.

Rehearing Denied March 3, 1934.

Dudley Cornell, of Albuquerque, for appellants.

George S. Klock, of Albuquerque, for appellee.

WATSON, Chief Justice.

This suit was commenced by Ackerson against Townsend and wife to foreclose a

deed of trust given by defendants Townsend to plaintiff's assignor, covering lot 1, block 59, Terrace addition, Albuquerque, as designated on the plat of that addition filed May 24, 1928. Albuquerque Lumber Company intervened, claiming a materialman's lien. From a judgment recognizing such lien and giving it priority to the deed of trust, plaintiff appeals.

Appellant first attacks the sufficiency of the filed claim as the basis of a lien, because of its attempted description of the property to be charged. The only descriptive or identifying data furnished is this: "Lot one (1) of block numbered thirty-five (35) in the Terrace Addition to the City of Albuquerque, New Mexico, as shown on map filed May 24th, 1928, together with all improvements thereon, for materials furnished by claimant to be used in the construction, alteration and repair * * * · of a certain dwelling situated thereon. * * * That the name of the owner or reputed owner of said property is Geo. Townsend & Susie B., his wife, and the name of the person to whom claimant furnished the said material is Geo. Townsend."

A claim of lien should contain "a description of the property to be charged with the lien, sufficient for identification." Comp. St. 1929, § 82-206. The claim here in suit does not describe the property upon which the lien was adjudged. It appears on its face to describe other property. We must seek in the findings a theory to support the judgment.

It appears that the deed of trust was given to secure a loan to be used in the erection of a residence and garage on the property in question.' The loan was negotiated through one Hammond, who, as agent of the lender, disbursed the money from time to time as needed in making the improvement. He knew that the appellee's materials were being used, had himself paid $500 on the account, and was advised of an unpaid balance of some $700. According to the plat referred to, there is no block 35 in the Terrace addition. The plaintiff is not a holder for value, the assignment having been made to enable him to foreclose.

Though not found, the evidence discloses, and counsel do not question, that appellee intended to claim a lien on the property here in question, and that it was misdescribed through mere inadvertence; that, as originally surveyed and platted, the Terrace addition did contain a block numbered 35, but that as resurveyed, and according to the later plat filed May 24, 1928, the land formerly in block 35 was included in blocks 34 and 36; and that Townsend owned and was engaged in improving other property in the addition, none, however, in which either appellee or appellant was interested.

These facts, of course, have their appeal to a court of equity, naturally viewing with favor the underlying principle of mechanics' and materialmen's liens that he whose labor or material goes to enhance the value of a property may fairly look to it for reimbursement.

Nevertheless, the lien is of statutory, not equitable, origin. It depends wholly upon the existence of certain conditions and the performance by the claimant of a prescribed

act. The absence of the conditions or the nonperformance of the act leaves equity powerless. The court's function is not to create a lien. It can only declare and enforce an existing lien.

In New Mexico the lien arises upon the filing of a claim for record. Certain matters must be stated therein. Among these is "a description of the property to be charged with the lien, sufficient for identification."

In the earlier decisions in this jurisdiction, this statute, by which a lien is imposed upon property regardless of the owner's consent, was deemed subject to strict construction, because in derogation of the common law. Later, however, the remedial character of the statute more strongly impressed itself; a liberality of construction appropriate in such cases was indulged; and the rule may now be said to be that substantial compliance with the statutory requirements will support the lien. Hot Springs Plumbing & Heating Co. et al. v. Wallace, 38 N. M. 3, 27 P.(2d) 984.

In determining what is substantial compliance with some of the particular statutory requirements, consideration will naturally and properly be given to the purpose of such requirement and to the effect of a misperformance in that respect upon the rights of others. To illustrate, in Hot Springs Plumbing & Heating Co. v. Wallace, supra, in determining whether the verification was sufficient, though not a literal compliance with the statute, we were influenced by our view that the verification was not required as proof of the contents of the claim.

This is not exactly the case with the descriptive requirement, as to which the statute furnishes the test—"sufficient for identification"—and at once discloses the office—"identification" of the property to be charged. It would be inept to say of a description that it is *substantially* sufficient for identification. Clearly it must be sufficient or there will be no lien. Yet there is enough of indefiniteness in the test to leave room for difference of opinion in the particular case.

If we are so far correct, the findings above mentioned, in the main, have no bearing on the sufficiency of this description to support a lien. The knowledge of the "owner," considered as "the party in interest who is the source of authority for the improvement" (Freidenbloom v. Pecos Valley Lumber Co., 35 N. M. 154, 290 P. 797, 798), as Townsend is here, or of any other party in interest, that materials have been furnished or are unpaid for; even his written engagement to pay for them; actual service of a claim of lien upon him; the claimant's evident purpose and intent to claim the lien—no one or all of such facts can take the place of the indispensable act of filing for record a sufficient claim.

That leaves for consideration the single finding that there is no block 35 in the Terrace addition.

This fact distinguishes the case at bar from D. I. Nofziger Lumber Co. v. Waters, 10 Cal. App. 89, 101 P. 38, Goodrich Lumber Co. v. Davie, 13 Mont. 76, 32 P. 282, and Powers v. Brewer, 238 Ky. 579, 38 S.W.(2d)

466, 467, on which appellant mainly relies. These cases strongly hold that a description of one property cannot be varied by evidence of intent and mistake, so as to apply to and support a lien upon another. In the first of these decisions, block 4 was misdescribed as block 5. In the second, lot 14 was misdescribed as lot 13. In the third, the east 15 feet of lot 19 and all of lot 20 was misdescribed as lot 18 and 5 feet of lot 19. In the two last mentioned, the properties adjoined and were in the same ownership. In the first mentioned, the error was evidently caused by the owner's similar error in his recorded building contract. All of these suits were against the owner, and in not one of them could he have been misled.

Many decisions are brought to our attention instancing in one way or another an inaccurate or erroneous description sustained as support for a lien. It would not be profitable to review them here. Perhaps no branch of the law is in greater confusion than that of mechanics' and materialmen's liens. The reason is that there is no uniformity of statute, either in expression or in principle. This important fact has not always been recognized. Occasionally the court of one state has adopted a ruling in another without consideration of statutory differences. Precedents from other jurisdictions must therefore be carefully scrutinized.

In passing, we note early recognition that our statute was derived from that of California. Lee, J., dissenting in Post v. Miles, 7 N. M. 317, 34 P. 586. In fact, as adopted in 1880, and as it stands today, it is the California statute of 1872, as amended in 1873–

74. In the meantime, however, the mother statute has been worked over again and again. In other states the process of perfecting the lien scheme has been going on. As courts have discovered weaknesses or defects in the statutes, Legislatures have sought to remedy them. We have made no advance in this respect in more than fifty years.

It is not our view that every inaccuracy or imperfection of description will be necessarily fatal. The statute does not require nor contemplate a precise delimiting of the land to be charged. This is evident, since the land to be charged remains necessarily indefinite at the time of filing the claim; being "so much as may be required (in the court's determination) for the convenient use and occupation" of "the building, improvement or structure * * * constructed"; the latter being the "property" primarily to be charged, and hence primarily to be described.

In practice, however, the simplest means of describing the building, improvement, or structure is by its location upon a particular lot. Accordingly, the claimant often essays, as in this case, an accurate description of the land, relying upon it as sufficient to identify the building, by definitely locating it. The method is beyond criticism, but the result of error may be serious. Dependent on location alone, and that failing, the description fails.

In this case, if we reject the error, we have no identifying data except "a certain dwelling" in the Terrace addition, of which one George Townsend is the reputed owner. It is not as if, after rejecting the erroneous description by plat, there remained a correct

designation of the street number of the structure, or some well-known and distinctive designation such as "the First Methodist Church" or "the City Library." Cases of that kind are not in point.

Of course, if the claimant has not furnished materials to the same "owner" for more than one structure, a detective agency would soon solve the mystery. But the statute cannot have contemplated any such resort.

It is equally true that Townsend, and perhaps true that Hammond, having knowledge of the filing of this claim, would not have been misled by the error. And this we think the point on which appellee most strongly relies. It is doubtful if counsel would seriously contend as he does if he were here asserting his lien as against a subsequent purchaser or mortgagee who had relied upon a certified abstract failing to show this lien because of the erroneous description in the filed and recorded claim. It is doubtful if the learned trial judge would have sustained the contention if made.

This brings us to the question of law which we deem decisive. Is there one test of sufficiency as against the "owner" or other party in possession of the facts, and another as against the subsequent purchaser or incumbrancer in good faith for value?

Contending that there is, appellee cites Union Lumber Co. v. Simon, 150 Cal. 751, 89 P. 1077, decided 1906, by the California Court of Appeals, First District, but overlooks the fact that the Supreme Court, reviewing this decision April 2, 1907, overruled it on that very point, saying: "We do not agree to that part of the opinion of Justice Harrison intimating that a notice of lien, sufficient as to the owner, may be void as to third persons without knowledge of the extrinsic facts." 89 P. 1081, 150 Cal. 751.

It may or may not be a related fact that, ten days before the rendering of this latter decision, the Legislature added a new provision to the California statute (Code Civ. Proc. § 1203a, as added by St. 1907, p. 858) that "no mistakes or errors * * * in the description of the property against which the claim is filed, shall invalidate the lien, unless the court finds * * * that the innocent third party, without notice, direct or constructive, has since the claim was filed, become the bona fide owner of the property liened upon, and that the notice of claim was so deficient that it did not put the party upon further inquiry in any manner." This provision, appearing in its substance in many statutes, of course modifies the general test as to the sufficiency of the description.

The Supreme Court of Kentucky has reached the same conclusion as that in California. Powers v. Brewer, supra.

Another common statutory requirement is that the claimant, before or at the time of filing his claim, give actual notice to the owner. This makes a distinction between the owner and others, suggesting at least the propriety of inquiring whether the particular party resisting the lien could have been misled; though the California and Kentucky Supreme Courts evidently did not so consider, there having been provision for such notice in both states. Most, if not all, of the authorities cited by appellee cease to be per-

suasive when these and other statutory differences are considered.

Our statute rests the lien upon the affirmative act of the claimant. It requires that the claim include a description. It assumes to furnish a criterion of sufficiency. As this court has said: "The primary object of filing the claim is to give notice to subsequent purchasers and incumbrancers and inform the owner of the extent and nature of the lienor's claim." Weggs v. Kreugel, 28 N. M. 24, 205 P. 730, 731. Obviously, misdescription may do more harm to a subsequent purchaser than to the "owner." Yet the statutory test is single. If we should admit that the test may be relaxed as against the "owner," how shall we resist the contention that the description may be omitted entirely in such case? And, on the same principles, we should be called upon in each case of a subsequent purchaser or incumbrancer to inquire what knowledge or means of knowledge he had. The statutory criterion would cease to operate. The new test would be a description which, plus the knowledge of extrinsic facts possessed by or imputable to the party to be charged, will enable him to identify the property.

As we view the statute, actual knowledge plays no part. No actual notice is required. The claimant is required to place means of knowledge at the disposal of all the world. Thereby all the world are equally chargeable with notice. It seems plain, therefore, that "sufficient for identification" requires a description which, spread upon the public records, may fairly and reasonably be held to constitute constructive notice.

An abstracter here testified that, "as an abstracter making a search of the records of the county clerk's office with regard to Lot 1 of Block 59," he would not "include any reference to this claim of lien." The trial judge then inquired: "It is an obvious proposition, isn't it, that if you were searching for Lot 1 in Block 59, you won't include any other lot?" The witness answered, "No, sir." This is somewhat equivocal. It at least suggests, what no experienced lawyer will question, that, notwithstanding what in practice at least is deemed reasonable prudence, a purchaser might have this title passed to him as being free from lien.

Appellant claims to have shown that, before commencing his foreclosure suit, he called for and obtained an abstracter's report of judgment and lien claims and that the report did not disclose appellee's claim. We know that appellee was not named as a party defendant.

We do not mention these facts as having a bearing on the decision of this particular case. We regard them as natural and probable consequences of an error in description such as we have here. The probability of such consequences, which we cannot doubt, sufficiently argues that the present claim should not be sustained.

We feel constrained to reverse the judgment. The cause will be remanded, with a direction to modify the judgment to conform hereto. It is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.